UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>ROBERT W. SAUNDERS,<br><br>          Defendant. | Case No. 14-CR-00243-LHK-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 47 |

On November 4, 2015, Defendant Robert Saunders filed a motion to suppress statements he made to government agents on September 21, 2012. On December 9, 2015, this Court held an evidentiary hearing on the matter. Susan Knight and Michelle Kane represented the United States of America. Erik Babcock represented Mr. Saunders. At the hearing, Mr. Saunders, Federal Bureau of Investigation ("FBI") Special Agent Hans Frank ("Agent Frank"), FBI Special Agent Robert Basañez ("Agent Basañez"), and FBI Special Agent Doug Hunt ("Agent Hunt") testified as to the events occurring on September 21, 2012. The parties submitted post-hearing briefs on December 18, 2015. Having read and considered the papers filed in connection with this matter, and the testimony presented at the evidentiary hearing, the Court hereby DENIES Mr. Saunders's motion to suppress.

...

## I. BACKGROUND

On approximately September 1, 2012, a representative of the software company NetSuite reported a computer intrusion and possible theft of user credentials to the FBI. Declaration of Hans Frank ("Frank Decl."), ECF No. 49, Exh. 2, ¶ 2. The FBI interviewed NetSuite employees and learned that NetSuite had concluded that Mr. Saunders had designed a piece of software to extract data from NetSuite's system. Search Warrant, ECF No. 46, Exh. 1, ¶ 33. The FBI conducted their own investigation, and concluded that the IP address responsible for the intrusion was assigned to an individual in the same apartment complex where Mr. Saunders lived, but to a different apartment number than Mr. Saunders's apartment. *Id.* ¶¶ 29, 32, 36.

The FBI obtained a search warrant for Mr. Saunders's apartment from Magistrate Judge Jacqueline Corley on September 21, 2012. Frank Decl. ¶ 4; Search Warrant. The agents executed the search warrant the same day at approximately 3:58 p.m. Frank Decl. ¶ 5. The agents knocked and announced their presence at the front door to the apartment. *Id.* When there was no response, the agents breached the door with their guns drawn. Declaration of Douglas Hunt ("Hunt Decl."), ECF No. 49, Exh. 3, ¶ 3; Evidentiary Hearing Trans. ("Trans.") at 37:9-11. Once the FBI Agents entered Mr. Saunders's apartment, the FBI Agents placed Mr. Saunders in handcuffs. Frank Decl. ¶ 7; Hunt Decl. ¶ 5.

The parties offer divergent versions of what transpired next. The Court describes each party's version of events, as presented at the evidentiary hearing and in the parties' declarations.

### A. Mr. Saunders's Version of Events

According to Mr. Saunders, while Mr. Saunders was still in handcuffs, some of the FBI Agents escorted Mr. Saunders outside Mr. Saunders's apartment. Trans. at 27:14-15; Declaration of Robert Saunders ("Saunders Decl."), ECF No. 47, ¶ 2. Once outside, Mr. Saunders was placed in the back seat of an agent's Ford Explorer. Trans. at 15:4-11, 17:6-8; Saunders Decl. ¶ 3. Mr. Saunders stated in his declaration that he does "not recall whether the handcuffs were taken off while [he] was still in the vehicle or at some other point." Saunders Decl. ¶ 3. Mr. Saunders testified at the evidentiary hearing that the handcuffs were removed once Mr. Saunders was seated

2

in the car. Trans. at 17:9-11. Mr. Saunders stated in his declaration that "[a]gents were seated on both sides of [Mr. Saunders] preventing [Mr. Saunders] from exiting the vehicle" and does not mention other agents in the car. Saunders Decl. ¶ 3. Mr. Saunders testified at the evidentiary hearing that there were two additional agents seated in the front seat of the car. Trans. at 15:12-13.

Once in the car, the agents asked Mr. Saunders if he knew why the agents were there. Trans. at 17:20. When Mr. Saunders responded that he did not know, the agents asked Mr. Saunders if he knew anything about NetSuite. *Id.* at 17:23-24. At that point, Mr. Saunders requested a lawyer. *Id.* at 17:25-18:1. Mr. Saunders testified at the evidentiary hearing that Mr. Saunders and the agents engaged in "at least five or six minutes" of discussion about whether Mr. Saunders needed an attorney during which Mr. Saunders repeatedly asked for a lawyer. *Id.* at 18:3-8, 19:7-8.

Mr. Saunders stated in his declaration that he "told [the agents] at one point that if anything [Mr. Saunders] said was going to be used against [him] in court that [Mr. Saunders] wanted a lawyer" and that the "agents assured [Mr. Saunders] that it was not a formal interview and that [Mr. Saunders] did not need a lawyer." Saunders Decl. ¶ 5.

At the evidentiary hearing, Mr. Saunders testified that he asked the agents why Mr. Saunders had not been read his *Miranda* rights and the agents said that nothing Mr. Saunders said would be used to charge Mr. Saunders. *Id.* at 19:1-3, 28:24-25. Mr. Saunders's declaration does not mention asking about his *Miranda* rights. *See* Saunders Decl.

Mr. Saunders testified that he eventually agreed to speak with the agents even though he did not have a lawyer because the agents told Mr. Saunders that Mr. Saunders was not facing any charges and would not be arrested if he cooperated. Trans. at 18:9-15. Mr. Saunders was under the impression that he would be arrested if he did not speak to the agents. *Id.* at 18:16-19. Mr. Saunders was not told that he was free to leave and he did not feel like he could choose to stop the interview and exit the car. *Id.* at 20:15-24, 25:23-26:5. Mr. Saunders was never given *Miranda* warnings. *Id.* at 18:24-19:4. The interview lasted approximately 45 minutes. *Id.* at 18:12-14.

3
Case No. 14-CR-00243-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

### B. The Government's Version of Events

According to the government, Mr. Saunders was placed in handcuffs only while the agents performed a protective sweep of Mr. Saunders's apartment. Frank Decl. ¶ 7; Hunt Decl. ¶ 5; Trans. at 84:6-8 (Hunt's testimony). Agents Frank and Hunt explained to Mr. Saunders that the agents were executing a search warrant, that Mr. Saunders was not under arrest, that Mr. Saunders was being temporarily placed in handcuffs, and that Mr. Saunders would be released from the handcuffs and free to leave once the apartment was secured. Trans. at 37:21-38:4, 38:16-21 (Frank's testimony); *id.* at 81:4-16, 84:7-8 (Hunt's testimony); Hunt Decl. ¶¶ 5-6. The agents removed the handcuffs after approximately two minutes. Trans. at 84:6-8 (Hunt's testimony); Hunt Decl. ¶ 5. The agents also holstered their weapons after securing Mr. Saunders's apartment. Trans. at 37:12-15 (Frank's testimony). After removing the handcuffs from Mr. Saunders, the agents asked Mr. Saunders if he would be willing to participate in an interview, and Mr. Saunders agreed. Trans. at 38:16-21 (Frank's testimony); *id.* at 84:11-19 (Hunt's testimony); *id.* at 68:15-18 (Basañez's testimony).

Mr. Saunders lived in a studio apartment that consisted of one room functioning as both the living room and bedroom, a bathroom, and a kitchen. *Id.* at 36:16 (Frank's testimony); 65:24, 74:18-23 (Basañez's testimony). There was no place to sit in the bathroom or kitchen, and the living room/bedroom contained only a bed and a desk. *Id.* at 75:3-76:1. There was drug paraphernalia throughout the apartment, including needles and aluminum foil. *Id.* at 39:2-4 (Frank's testimony); *id.* at 65:25-66:1, 75:17-20 (Basañez's testimony); *id.* at 82:5-10, 83:2-6 (Hunt's testimony); Hearing Exh. 1-A; Hearing Exh. 1-B. During the evidentiary hearing, photographs of the needles and aluminum foil found in the living room were admitted into evidence. Trans. at 82:17-19, 83:9-13; Hearing Exh. 1-A; Hearing Exh. 1-B. The apartment also had a patio with a storage closet. Trans. at 66:10-11 (Basañez's testimony). Because Mr. Saunders's apartment was a small studio, because of safety concerns arising from the needles and aluminum foil in Mr. Saunders's apartment, and because the closet on the patio needed to be searched, the agents asked Mr. Saunders if they could conduct the interview in Agent Basañez's

4

car. *Id.* at 38:22-39:11 (Frank's testimony); *id.* at 67:3-6 (Basañez's testimony); *id.* at 84:15-21 (Hunt's testimony). Mr. Saunders agreed to use Agent Basañez's car as the interview location. *Id.* at 39:7-13 (Frank's testimony); *id.* at 68:23-25 (Basañez's testimony); *id.* at 84:20-21 (Hunt's testimony). Mr. Saunders's demeanor when he agreed to speak to the agents was calm, alert, and coherent. *Id.* at 68:10-14 (Basañez's testimony).

Mr. Saunders walked out of the apartment without being pushed or guided and walked with Agents Frank and Basañez to Agent Basañez's car. *Id.* at 39:15-25 (Frank's testimony); *id.* at 69:8-19 (Basañez's testimony); *id.* at 84:22-85:6 (Hunt's testimony). Agent Basañez's car was parked in front of Mr. Saunders's apartment building. *Id.* at 38:22-39:6, 40:11-13 (Frank's testimony); *id.* at 68:19-22, 69:20-22 (Basañez's testimony); *id.* at 84:11-19 (Hunt's testimony). The only law enforcement modifications to the car were a radio and a covered box in the trunk. *Id.* at 40:24-41:2 (Frank's testimony); *id.* at 70:24-71:6 (Basañez's testimony). The agents removed their tactical vests before interviewing Mr. Saunders. *Id.* at 60:16-25 (Frank's testimony); *id.* at 71:11-13 (Basañez's testimony). Agent Frank sat in the back seat with Mr. Saunders, and Agent Basañez sat in the front passenger seat. *Id.* at 40:14-17 (Frank's testimony); *id.* at 70:3-8 (Basañez's testimony); *id.* at 87:11-14, 90:20-21 (Hunt's testimony). There were no other agents in the car, and the doors were unlocked. *Id.* at 41:7-12 (Frank's testimony); *id.* at 70:16-18 (Basañez's testimony). At some point during the interview, Agent Hunt came to the car to tell Agents Frank and Basañez that the agents had found firearms in Mr. Saunders's apartment, but Agent Hunt did not enter the car. *Id.* at 42:15-22 (Frank's testimony); *id.* at 71:23-72:2, 76:5-7 (Basañez's testimony).

The agents did not give Mr. Saunders *Miranda* warnings, and Mr. Saunders did not ask why he had not been read his *Miranda* rights. *Id.* at 42:24-43:6 (Frank's testimony); *id.* at 72:11-16 (Basañez's testimony). Mr. Saunders did not ask to speak to an attorney. *Id.* at 41:15-25, 58:8-12 (Frank's testimony); *id.* at 71:18-22 (Basañez's testimony); *id.* at 83:24-84:2 (Hunt's testimony). Throughout the interview, Mr. Saunders was "cooperative, coherent," and "able to answer technical questions." *Id.* at 45:7-11 (Frank's testimony). Mr. Saunders was nervous but

5

did not appear reluctant to speak to the agents. *Id.* at 45:14-18 (Frank's testimony). The interview was cordial and not combative. *Id.* at 45:12-18 (Frank's testimony). During the interview, Agents Frank and Basañez asked Mr. Saunders questions about his dealings with NetSuite and his drug use, and Agent Hunt later asked Mr. Saunders about his drug use and firearms. *Id.* at 42:1-4, 43:15-17, 59:22-60:3 (Frank's testimony); *id.* at 88:20-25 (Hunt's testimony). The interview lasted approximately one hour. *Id.* at 42:11-12 (Frank's testimony). At some point during the interview, Mr. Saunders consented to a search of his car and signed a Consent to Search form for the search of his car. *Id.* at 43:18-44:19; Evidentiary Hearing Exh. 4.

### C. Procedural History

On April 30, 2014, the grand jury returned against Mr. Saunders an indictment with four counts of intentional damage to a protected computer and one count of obtaining information from a protected computer without authorization. ECF No. 1. On September 10, 2015, the grand jury returned against Mr. Saunders a superseding indictment with one count of intentional damage to a protected computer, four counts of obtaining information from a protected computer without authorization, and two counts of possession of a firearm used in interstate commerce while unlawfully using controlled substances. ECF No. 41.

On November 4, 2015, Mr. Saunders filed a motion to suppress "any statements taken from defendant Saunders on September 21, 2012," alleging that the statements were in violation of Mr. Saunders's Fifth Amendment rights because the interrogation took place when Mr. Saunders was in custody and without the benefit of a *Miranda* warning. ECF No. 47. The government filed an opposition on November 18, 2015. ECF No. 49. The Court conducted an evidentiary hearing in connection with the motion on December 9, 2015. Following the hearing, the parties submitted supplemental briefs in support of their respective positions on December 18, 2015. ECF Nos. 58, 59.

## II. LEGAL STANDARD

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that certain warnings must be given before a suspect's statements made during a custodial interrogation can be admitted

6

into evidence. *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). "[I]n custody" means "formal arrest or restrain on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam). It requires that "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave," as judged by the totality of the circumstances. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d).

The Ninth Circuit has identified five factors relevant to the custody determination, referred to as the *Kim* factors. The *Kim* factors are: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009) (as amended on denial of rehearing) (quoting *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002)).

### III. DISCUSSION

Mr. Saunders argues that his statements made to the FBI agents on September 21, 2012 should be suppressed because the statements were made during a custodial interrogation and Mr. Saunders was never given *Miranda* warnings. The parties agree that Mr. Saunders was not given *Miranda* warnings. Instead, the parties dispute whether Mr. Saunders was in custody for purposes of *Miranda* during the interview on September 21, 2012.

The Court begins its discussion by making credibility determinations and findings of fact based on the testimony presented at the evidentiary hearing. Based on the Court's findings of fact, the Court then addresses whether Mr. Saunders was in custody during the September 21, 2012 interview based on the *Kim* factors.

#### D. Credibility Determinations and Findings of Fact

Following the evidentiary hearing, the Court found the testimony of Mr. Saunders not

credible.  Mr. Saunders testified that he had been "up pretty late" the night before the search and that he did not remember many of the details of the events of September 21, 2012.  Trans. at 13:22-14:1, 25:3-7.  At the hearing, Mr. Saunders could not remember what his apartment number had been on September 21, 2012, *id.* at 13:16-17, 22:1-2, or whether the FBI agents came to his apartment in the morning or afternoon, *id.* at 13:18-14:1, 22:6-8.  Additionally, the Court noted that Mr. Saunders's testimony at the evidentiary hearing was inconsistent with the declaration Mr. Saunders provided in support of his motion to suppress.  In Mr. Saunders's declaration, he stated that he could not remember when the handcuffs were taken off, Saunders Decl. ¶ 3, but at the evidentiary hearing Mr. Saunders testified that the handcuffs were removed as soon as he was placed in Agent Basañez's car, Trans. at 17:9-11.  Mr. Saunders's declaration mentions only two FBI agents present for the interview, one seated on either side of Mr. Saunders, Saunders Decl. ¶ 3, but Mr. Saunders testified at the evidentiary hearing that there were four agents in the car, Trans. at 15:12.  Mr. Saunders's declaration states that "at one point" in the middle of the interview he told the agents that "if anything I said was going to be used against me in court . . . I wanted a lawyer," and the declaration does not mention any protracted discussion about whether Mr. Saunders could speak with a lawyer right away.  Saunders Decl. ¶ 5.  By contrast, Mr. Saunders testified at the evidentiary hearing that almost as soon as the interview began he and the agents had a five or six minute long discussion about whether Mr. Saunders could speak with a lawyer, during which Mr. Saunders "repeatedly" asked to speak with a lawyer.  *Id.* at 17:19-18:8, 19:7-8.

On the other hand, the Court found the testimony of FBI Special Agents Frank, Basañez, and Hunt credible.  The testimony of Agents Frank, Basañez, and Hunt was consistent with each other and with the declarations submitted by each of the agents in support of the government's opposition to Mr. Saunders's motion to suppress.

Accordingly, the Court adopts the version of events of September 21, 2012 put forward by in the testimony of Agents Frank, Basañez, and Hunt, as described above.

### E.  *Kim* Factors for Custody Determination

The Ninth Circuit has identified five factors relevant to the custody determination: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Bassignani*, 575 F.3d at 883 (quoting *Kim*, 292 F.3d at 974). The Court addresses each factor in turn.

### 1. The language used to summon the individual

The first *Kim* factor is the language used to summon the individual to the interview. The Ninth Circuit has emphasized that a defendant's agreement to accompany officers "to the police station or to an interrogation room" weighs in favor of finding the interrogation non-custodial. *Bassignani*, 575 F.3d at 884. By contrast, if the officers order the defendant to submit to an interview, the first *Kim* factor weighs in favor of finding the interrogation custodial. *Kim*, 292 F.3d at 974-75.

In the instant case, the FBI agents handcuffed Mr. Saunders for two minutes immediately upon entering the apartment so the agents could perform a protective sweep. Frank Decl. ¶ 7; Hunt Decl. ¶ 5; Trans. at 84:6-8 (Hunt's testimony). The agents then told Mr. Saunders that he was not under arrest and that he was free to leave once the apartment was secure. Trans. at 37:21-38:4, 38:16-21 (Frank's testimony); *id.* at 81:4-16, 84:7-8 (Hunt's testimony). After the apartment was secure, and the handcuffs were removed, the agents asked Mr. Saunders if he would be willing to participate in an interview, and Mr. Saunders agreed. *Id.* at 38:16-21 (Frank's testimony); *id.* at 84:11-19 (Hunt's testimony); *id.* at 68:15-18 (Basañez's testimony). The agents asked Mr. Saunders if he would agree to use Agent Basañez's car as the interview location, and Mr. Saunders again agreed. *Id.* at 38:22-39:13 (Frank's testimony); *id.* at 68:23-25 (Basañez's testimony); *id.* at 84:15-21 (Hunt's testimony). Mr. Saunders was not handcuffed when he agreed to be interviewed or when he agreed to the interview location. Trans. at 84:6-21 (Hunt's testimony); Hunt Decl. ¶ 5. Because the handcuffs were removed before the agents asked Mr. Saunders to participate in the interview, the fact that Mr. Saunders was briefly handcuffed previously is insufficient to make the interview custodial in light of Mr. Saunders's subsequent

9

agreement to participate in the interview.  *See, e.g.*, *United States v. Gould*, No. CR 12-00464-DLJ, 2013 WL 163287 (N.D. Cal. Jan. 15, 2013) (holding that a defendant not in custody when the defendant had been handcuffed but the handcuffs were removed before the defendant agreed to be interviewed).  No force was used to compel Mr. Saunders to leave his apartment and go to Agent Basañez's car for the interview.  Trans. at 39:15-25 (Frank's testimony); *id.* at 69:8-19 (Basañez's testimony); *id.* at 84:22-85:6 (Hunt's testimony).

Based on the fact that Mr. Saunders agreed to go with the agents to the interview, the Court finds that the first *Kim* factor weighs in favor of finding the interrogation non-custodial.  *See Bassignani*, 575 F.3d at 884 (a defendant's agreement to accompany officers "to the police station or to an interrogation room" weighs in favor of finding the interrogation non-custodial).

### 2. The extent to which the defendant is confronted with evidence of guilt

The second *Kim* factor is the extent to which the defendant is confronted with evidence of guilt.  This factor weighs in favor of finding the interrogation custodial when the tone of the questioning is "aggressive, coercive, and deceptive."  *Bassignani*, 575 F.3d at 884-85.  By contrast, when the interview is a "consensual" conversation "conducted in an open, friendly tone," this factor weighs in favor of finding the interrogation non-custodial.  *Id.*

In the instant case, the Court finds that the interview was cordial and not combative.  Trans. at 45:12-18 (Frank's testimony).  The Court finds that throughout the interview, the agents asked Mr. Saunders questions about his dealings with NetSuite, his drug use, and his firearms, all of which Mr. Saunders answered in a "cooperative, coherent" fashion.  *Id.* at 42:1-4, 43:15-17, 45:7-11, 59:22-60:3 (Frank's testimony); *id.* at 88:20-25 (Hunt's testimony).  The Court finds not credible Mr. Saunders's testimony that the agents coerced Mr. Saunders into speaking with them by telling Mr. Saunders that nothing he said would be used against him.  *Id.* at 18:9-15 (Saunders's testimony).  The Court also finds not credible Mr. Saunders's testimony that the agents blocked Mr. Saunders's ability to exit the car during the interview.  *Id.* at 15:12.  Thus, the Court finds that the interview was neither aggressive, coercive, nor deceptive, but was instead a consensual conversation conducted in a cordial manner.  Therefore, the second *Kim* factors weighs

in favor of finding the interrogation non-custodial.  *See Bassignani*, 575 F.3d at 884-85 (when the interview is a "consensual" conversation "conducted in an open, friendly tone," this factor weighs in favor of finding the interrogation non-custodial).

### 3. The physical surroundings of the interrogation

The third *Kim* factor is the physical surroundings of the interrogation.  Generally, when the interrogation is conducted in familiar surroundings instead of in "the more coercive environment of a police station," this factor weighs in favor of finding the interrogation non-custodial.  *Kim*, 292 F.3d at 980.  However, if familiar surroundings become a "police-dominated atmosphere" that "isolat[e] the defendant from the outside world," this factor weighs in favor of finding the interrogation custodial.  *Bassignani*, 575 .3d at 885 (quoting *Kim*, 292 F.3d at 977).  Considerations that factor into whether a familiar environment has been transformed into a police-dominated atmosphere include: "(1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made."  *United States v. Craighead*, 539 F.3d 1073, 1084 (9th Cir. 2008).

In the instant case, the interview was conducted in Agent Basañez's car, which was parked in front of Mr. Saunders's apartment building, not at the police station.  Trans. at 38:22-39:6, 40:11-13 (Frank's testimony); *id.* at 68:19-22, 69:20-22 (Basañez's testimony); *id.* at 84:11-19 (Hunt's testimony).  The parking area in front of Mr. Saunders's apartment building was familiar to him.  Additionally, the Court finds that Agent Basañez's car was selected as the interview location because Mr. Saunders's apartment was a small studio apartment, there were needles and aluminum foil throughout Mr. Saunders's apartment, and Mr. Saunders's patio had a closet that needed to be searched.  *Id.* at 38:22-39:11 (Frank's testimony); *id.* at 67:3-6 (Basañez's testimony); *id.* at 84:15-21 (Hunt's testimony).  The Court therefore discusses each of the *Craighead* factors to determine whether the interview was conducted in a police-dominated atmosphere.

11
Case No. 14-CR-00243-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

With regard to the number of law enforcement personnel and whether they were armed, Mr. Saunders was accompanied by only two agents for the interview, and both agents removed their tactical vests and had their weapons holstered during the interview. Trans. at 37:12-15, 41:7-12, 60:16-25 (Frank's testimony); *id.* at 71:11-13 (Basañez's testimony). Agent Basañez's car did not have any law enforcement markings or alterations other than a radio and a covered box in the trunk. *Id.* at 40:24-41:2 (Frank's testimony); *id.* at 70:24-71:6 (Basañez's testimony). The fact that the agents had weapons weighs slightly in favor of finding that the interview was conducted in a police-dominated atmosphere. *See Craighead*, 539 F.3d at 1085 ("[T]he presence of a large number of visibly armed law enforcement officers goes a long way towards making the suspect's home a police-dominated atmosphere."). However, this consideration does not weigh strongly in favor of finding a police-dominated atmosphere because there were only two agents in the car with Mr. Saunders, one in the back seat with Mr. Saunders and the other in the front passenger seat, and the agents' weapons were holstered. *Cf. id.* (discussing a case in which "the presence of eight officers in the home, one of whom unholstered his gun, contributed to a police-dominated environment") (citing *United States v. Mittel-Carey*, 493 F.3d 36, 38 (1st Cir. 2007)).

As to whether Mr. Saunders was restrained by physical force or threats, Mr. Saunders was not handcuffed during the interview. *Id.* at 84:6-8 (Hunt's testimony). Because only one agent sat with Mr. Saunders in the backseat of Agent Basañez's car, the other agent sat in the front passenger seat, and the car doors were unlocked, Mr. Saunders was not physically barred from exiting the car. *Id.* at 40:14-17 (Frank's testimony); *id.* at 70:3-8, 70:16-18 (Basañez's testimony); *id.* at 87:11-14, 90:20-21 (Hunt's testimony). There is no evidence in the record that the agents ever threatened Mr. Saunders. Even Mr. Saunders in his testimony at the evidentiary hearing stated only that he "figured" and "assumed" that the agents would arrest him if he did not cooperate. Trans. at 20:22-21:3 (Saunders's testimony). Moreover, Mr. Saunders agreed to participate in the interview and agreed to the interview location. Thus, this consideration weighs against finding that the interview was conducted in a police-dominated atmosphere.

With regard to whether Mr. Saunders was isolated from others, there was no one else at

Mr. Saunders's apartment from whom Mr. Saunders could have been isolated. *Id.* at 15:25-16:2 (Saunders's testimony); Hunt Decl. ¶ 5. Thus, this consideration is neutral.

Finally, while Mr. Saunders was in his apartment, the agents told Mr. Saunders that he was not under arrest and that he was free to leave. Trans. at 81:4-16. After being told that he was free to leave, Mr. Saunders agreed to participate in the interview. *Id.* at 38:16-21 (Frank's testimony); *id.* at 84:11-19 (Hunt's testimony); *id.* at 68:15-18 (Basañez's testimony). "If a law enforcement officer informs the suspect that he is not under arrest, that statements are voluntary, and that he is free to leave at any time, this communication greatly reduces the chance that a suspect will reasonably believe he is in custody." *Craighead*, 539 F.3d at 1087. Thus, this consideration weighs against finding that the interview was conducted in a police-dominated atmosphere.

Particularly in light of the facts that Mr. Saunders agreed to the interview after being told he was free to leave and agreed to use Agent Basañez's car as the interview location, the Court concludes that *Craighead* factors support finding that the interview was not conducted in a police-dominated atmosphere. Because the interview was not conducted in a police-dominated atmosphere, the physical surroundings of the interview weigh in favor of finding the interview non-custodial. *See Bassignani*, 575 F.3d at 885 (*Kim* factor for physical surroundings weighs in favor of finding interview non-custodial where the defendant was interviewed in an office conference room).

### 4. The duration of the detention

The fourth *Kim* factor is the duration of the detention. The Ninth Circuit has found a defendant not in custody for an interrogation of "more than one hour," *United States v. Crawford*, 372 F.3d 1048, 1052 (9th Cir. 2004), and "approximately 45 minutes," *United States v. Norris*, 428 F.3d 907, 911 (9th Cir. 2005). The Ninth Circuit has found a defendant to be in custody for an interrogation of 45 to 90 minutes. *Kim*, 292 F.3d at 972. In *Bassignani*, the Ninth Circuit found that the duration of a 2.5 hour interview weighed in favor of finding the defendant in custody but afforded this factor little weight and ultimately concluded the defendant was not in custody. 575 F.3d at 886-87.

In the instant case, Mr. Saunders testified that the interview lasted 45 minutes. Trans. at 18:12-14. The agents say the interview lasted for approximately one hour. *Id.* at 42:11-12 (Frank's testimony). An interview duration of between 45 minutes to one hour does not weigh strongly for or against finding a defendant in custody. *Compare Crawford*, 372 F.3d at 1052 (defendant not in custody for an interrogation of more than one hour), *with Kim*, 292 F.3d at 972 (defendant in custody for an interrogation of 45 to 90 minutes). Therefore, the Court concludes that this factor is neutral.

### 5. The degree of pressure applied to detain the defendant

The fifth *Kim* factor looks at the degree of pressure applied to detain the defendant. Generally, "a defendant is not in custody when officers tell him that he is not under arrest and is free to leave at any time." *Bassignani*, 575 F.3d at 886. However, the Ninth Circuit has held that a defendant who was told he was free to leave was nevertheless under custody because he was escorted to a storage room in his own home and an armed guard was placed by the door to his exit. *Craighead*, 539 F.3d at 1089.

In the instant case, Mr. Saunders was told that he was not under arrest and that he was free to leave before Mr. Saunders agreed to the interview. Trans. at 37:21-38:4, 38:16-21 (Frank's testimony); *id.* at 81:4-16, 84:7-8 (Hunt's testimony); Hunt Decl. ¶¶ 5-6. Mr. Saunders then agreed to the interview. *Id.* at 38:16-21 (Frank's testimony); *id.* at 84:11-19 (Hunt's testimony); *id.* at 68:15-18 (Basañez's testimony). Mr. Saunders further agreed to the interview location. *Id.* at 39:7-13 (Frank's testimony); *id.* at 68:23-25 (Basañez's testimony); *id.* at 84:20-21 (Hunt's testimony). Mr. Saunders walked from his apartment to the interview location without being under any force from the agents. *Id.* at 39:15-25 (Frank's testimony); *id.* at 69:8-19 (Basañez's testimony); *id.* at 84:22-85:6 (Hunt's testimony). In the car, the agents had their weapons holstered, *id.* at 37:12-15 (Frank's testimony), one agent sat in the back of the car with Mr. Saunders, the other agent sat in the front passenger seat, and the agents did not block Mr. Saunders's ability to exit the car, *id.* at 40:14-17 (Frank's testimony); *id.* at 70:3-8 (Basañez's testimony); *id.* at 87:11-14, 90:20-21 (Hunt's testimony).

Based on these facts, the Court concludes that the agents did not pressure Mr. Saunders to agree to the interview or to stay in the car once the interview began. Instead, the agents told Mr. Saunders that he was not under arrest and was free to leave before asking Mr. Saunders to participate in an interview, and the agents did not block Mr. Saunders's ability to leave the car during the interview. Therefore, the Court concludes that the fifth *Kim* factor weighs in favor of finding the interview non-custodial. *See Bassignani*, 575 F.3d at 886 ("We have consistently held that a defendant is not in custody when officers tell him that he is not under arrest and is free to leave at any time.").

Considering all five of the *Kim* factors, the Court concludes that the first, second, third, and fifth factors all weigh in favor of finding the interview non-custodial. The fourth *Kim* factor is neutral, and none of the *Kim* factors weigh in favor of finding the interview custodial. Therefore, the Court concludes that the interview of Mr. Saunders on September 12, 2012 was non-custodial.

Because Mr. Saunders was not in custody for the interview on September 12, 2012, the FBI agents were not required to give Mr. Saunders *Miranda* warnings. *See Stansbury*, 511 U.S. at 322 (holding that *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'"). Mr. Saunders has not advanced any other argument as to why the Court should suppress the statements Mr. Saunders made during the interview. The Court therefore DENIES Mr. Saunders's motion to suppress the statements made on September 21, 2012.

**IV. CONCLUSION**

For the foregoing reasons, Mr. Saunders's motion to suppress the statements made on September 21, 2012 is DENIED.

**IT IS SO ORDERED.**

Dated: December 21, 2015

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

15
Case No. 14-CR-00243-LHK-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS